Good morning, Your Honors. May it please the Court, my name is Jennifer Sobel, I represent Douglas Jackson. Mr. Jackson raises three issues for appeal today. First, whether or not the residual clause of 924C survives the Supreme Court decision in Johnson. Second, whether the District Court erred in applying an enhancement based on its finding that Mr. Jackson organized, which the government has conceded was applied in error. And third, whether or not the District Court erred in applying an enhancement to Mr. Jackson's sentence based on its finding that he obstructed justice when he testified in his own defense. I'll start with the 924C issue as it is the weightiest issue in this case. Mr. Jackson's conviction for 924C can only stand if sex trafficking of a minor remains a crime of violence after the Supreme Court's decision in Johnson. The parties agree that sex trafficking of a minor does not have force as an element. Thus, sex trafficking of a minor can only be a crime of violence if 924C3B remains in effect after Johnson. But, Your Honors, this Court has already decided that issue in Viva Seja, a decision that was handed down less than 11 months ago. There, this Court construed the identical language found in 16b and held that it did not survive the Johnson case. The Viva Seja Court noted that Johnson was decided or that the holding was dependent on the issues that the Supreme Court took with the categorical method as applied to the residual clause. Specifically, the Johnson Court rejected the notion that the ordinary case approach and the risk assessment method could result in any construction of a statute that wasn't vague. In Welch, just a couple of months ago, the Supreme Court reiterated that the Johnson decision depended in large part on its decision or its construction of the ordinary case approach and the risk assessment method. Your Honors, that same faulty analysis must be applied to 924C3B. As the government concedes, there is no way to construct 924C's residual clause without reliance upon the categorical method. And in Viva Seja, this Court struck 16b based on the fact that the residual clause relied on the ordinary case approach and the risk assessment method. There, this Court rejected every single argument that the government raises here. The Viva Seja Court rejected the argument that the absence of enumerated offenses in 16b made a shred of difference to the analysis. The Viva Seja Court rejected the argument that the fact that there wasn't the same weight of disagreement among the lower courts made any difference to the analysis. This Court rejected the government's argument that the absence of Supreme Court cases wrestling with 16b made any difference to the analysis. And all the Viva Seja... No. I'm sorry, Your Honor. The Supreme Court has now granted cert in Lynch. Yes, Your Honor, it has. I believe it has granted cert in Lynch to resolve the circuit split that has developed, a circuit split that this Court has already firmly weighed its opinion on. The government asked this Court... But if it reverses in Lynch, then the rationale in, you know, in both Viva Seja and your argument for this case would be undermined. Yes, Your Honor. I think that's fair to say. If the Court reverses the DiMaia opinion, our argument loses much of its credibility. However, I don't believe that the Court will reverse DiMaia, and I think that we see evidence of that in Welch. In Welch, when discussing the Johnson opinion, the Supreme Court reiterated that the Johnson opinion was dependent upon the ordinary case approach and the risk-assessment method. Nowhere there did the Court mention at all the sort of ancillary issues about the disagreement among the lower courts or the temporal scope of the ACCA residual clause as compared to the 924C3B residual clause or the 16B residual clause. In fact, in Schuette, the Sixth Circuit case, which follows the reasoning in Viva Seja, the Sixth Circuit noted that its case in Taylor, finding that 924C3B survives Johnson, was possibly in error because that Court did not have the benefit of Welch. The Schuette Court said the government's reading of Taylor has been undercut by the Supreme Court's intervening decision in Welch. As the Court made clear this term, the ACCA vagueness, and here the Court is quoting Welch, rests in large part on its operation under the categorical approach. That residual clause did not fail for the reasons latched onto by the government. Rather, it failed because applying the serious potential risk standard under the hypothetical risk posed by an abstract generic version of the offense. None of the problems the Johnson Court identified with the categorical approach are equally applicable at every step of the way in both 16B, as the Court noted in Viva Seja, but also in 924C3B. There is nothing at all about the fact that it is an offense as opposed to a sentencing statute that changes the analysis. A district court is required to employ the identical categorical method when considering 924C3B as it is when applying the Armed Career Criminals Act residual clause and as it is when it's applying 16B. And it bears repeating what the Supreme Court has said about the residual clause. Specifically, they've called it a judicial morass that defies systemic solution, a black hole of confusion, and uncertainty that frustrates any effort to import some sense of order and direction. That language, that description, applies with equal weight to 924C3B. The case law that's developed in interpreting the Armed Career Criminals Act is merely evidence of that judicial morass. It's evidence of that black hole. It did not create that black hole. And it's the result of the faulty categorical method that applies with equal weight here. Now, we'd argue that this Court is bound by 16B and bound by its decision in Viva Seja. This Court, as every other court in the country with the exception of the Sixth Circuit, which I'll get to in a second, has construed 16B and 924C3B coterminously. And that remains the case after Johnson. In re Hubbard, the Fourth Circuit noted that 16B and 924C3B were coterminous. The Eleventh Circuit in In re Pinter also noted that those cases are construed coterminously. Even the adverse decisions in the Eighth and Second Circuits and the Sixth Circuit in Hill, Prickett, and Taylor rely on this, all of those being 924C3B cases, rely on this court's decision in Viva Seja, a 16B case. So there is no distinction between the two statutes that any court has ever recognized. The one exception would be the Sixth Circuit in Schutte. But a close reading of that opinion suggests that that court is attempting to peddle back away from the decision in Taylor. Again, the Schutte court notes that Taylor was decided without the benefit of Welch and without the benefit of Welch's analysis of Johnson, which emphasizes that the reason that the residual clause was found to be unconstitutionally vague was because of the ordinary case approach and risk assessment method, not because of any of the sort of ancillary reasons articulated by the government. Now, for that reason, we'd ask this court to reject the opinions of Hill, Taylor, and Prickett. And to be quite frank, this court need not reject those opinions because those opinions reject this court. Each one of those opinions acknowledged this court's binding precedent in Viva Seja, again, decided only 11 months ago, and rejected this court's reasoning in those cases. None of those courts made any attempt to distinguish Viva Seja based on the fact that it was a 16B decision. None of those courts, and nor could they, they all acknowledged this court's conclusions and just simply came out a different way. And so the circuit split the government is concerned about is one that has already been created, but created by those courts by explicitly rejecting the findings here. I'd argue that the rules of this court prevent it from rejecting Viva Seja out of hand, and I'd argue that there's no reason to so casually toss aside this court's binding precedent. In Bethesda Lutheran Homes, this court, I'm sorry, I see that my time is up. But in Bethesda Lutheran Homes, this court noted that it would not reject its own precedent so casually without some intervening change in law or events. Nothing has happened in this case that would require it as such. The government didn't like the outcome now. It doesn't like the outcome. It didn't like the outcome then, and it's asking this court to reverse its precedent for no other reason. If there are no further questions from the court, I see that my time is up. Thank you, counsel. Good morning, Your Honors, and may it please the court. As Judge Rovner essentially noted, ultimately the question of exactly how broadly Johnson extends is an issue that will be decided by the Supreme Court itself in DiMaia. And for that reason, to be honest, this court may want to simply hold this case pending DiMaia. To the extent the court does want to go ahead and act now, though, and reach the merits, it should not create a circuit split for the first time on the 924C3B question and should instead join the Second, the Sixth, and the Eighth Circuits in holding that that statute is constitutional. It should, therefore, affirm Jackson's conviction and remand for resentencing. Now, I want to be clear. Of course, this is not the only case that's got this issue. I'm sorry, Your Honor? This is not the only case that has this issue. We have other earlier cases that are in the pipeline. There are other cases in the pipeline, Your Honor. This is the only case that I'm aware of in this circuit that cleanly raises this issue. All of the other cases the court would first have to consider the elements clause question. Does Hobbs Act robbery qualify? Does some other federal statute, federal bank robbery, et cetera, qualify? This is the only case I'm aware of that is in the pipeline that deals with the question of whether 924C on direct appeal is or is not constitutional. So you're suggesting, counsel, as we just issue an order saying we're holding the case? I think the court could easily do that. And let you folks give us memoranda after the case, DeMaias decided, and let us know what you think of it. That's certainly one way that the court could proceed. The court has a lot of other issues it faces, and it could make that decision. If the court decides, no, we want to go ahead and reach this issue, and I'm certainly not suggesting that the court should hold all of its 924C cases because there are many cases like the one just before and the one just after that deal with the Hobbs Act robbery question. If the court thinks Hobbs Act robbery falls under the elements clause, then that should be decided. If the court disagrees with that, it does present the same issue. So I can't tell you exactly how broadly it's going to apply. But Judge Roedner is correct if this court simply were to say, we think Viva Cesar controls, the government is just going to file a bunch of petitions, and then we're just going to wait and see what happens with DeMaias. So we hold it or the Supremes hold it, one or the other, right? I think that's correct. Now, the only way that that would not occur would be if this court were to accept the government's argument that 924C is different from 16B, and therefore 16B doesn't control. Now, once again, what the Supreme Court says in DeMaias may well impact how plausible that argument of mine is. But that is the argument that we're making. And we're not making it, to be clear, we're not making it on the grounds that the Sixth Circuit has tried to raise and tried to distinguish. And, in fact, the government does have an in-bank petition pending in Schutte. The defendant's in-bank petition in Taylor was denied. That case, I think, is in the Supreme Court, or at least is awaiting a presumed cert petition. And we have an in-bank petition pending in Schutte in the Sixth Circuit that has not been ruled on. The argument that we are making, though, and that we are preserving even if DeMaias goes against us, is essentially that 924C is different. It is a sentencing statute, and it is not a sentencing statute, and it is serving a different function. In the context of 16B, in the context of the guidelines, in the context of the Armed Career Criminal Act, there is simply a finding. This is a statute. This is a conviction. You sort into one basket or another. This is a crime of violence. This does increase your sentence. But we've already used arguments to distinguish our approach on that basis. I'm sorry, Your Honor? We've already rejected the arguments that, you know, to distinguish our approach on that basis. No, I'm sorry, Your Honor. Your Honor, I'm not referring to the arguments in Viva Seja. I'm referring to the fact that all of those other cases, including Viva Seja, are sentencing statutes, and this is a crime of conviction. That's not something that was dealt with in Viva Seja because it wasn't dealing with a crime of conviction. Here, in the 924C3B context ---- But that's the only distinction, that 16B is a sentencing statute and 924C is not. But we've already rejected the arguments to distinguish our approach on that basis, as far as I can tell. Well, if that's the way the Court feels, I don't know that I can dissuade you, but I do think that there are distinctions, and I can assure you that the Court did not discuss any of those things in Viva Seja because Viva Seja was not dealing with a statute of conviction, and none of the arguments that we've raised are right. The clauses of 16B and 924C are identical. Well, the words are identical, Your Honor. The only question is how does this apply, and does it apply differently when you're dealing with a sentencing statute where once one says, yes, this is a crime of violence, it does or does not apply, or is it simply serving a screening function after which the jury then must make a finding that, in fact, it is in furtherance of the underlying crime. That is a distinction and one that we believe has merit. It's a question of how bounded the Court's discretion is. It's a question because it is essentially then going to a jury screening function. So we do believe that that is an argument that can be raised. I mean, most of the arguments, I agree, Your Honor, were dealt with. Those particular ones were not. There is, of course, also the threshold question of whether, in this particular instance, this is the particular defendant who can raise this challenge. The Supreme Court has long said that outside of the First Amendment context, a facial challenge cannot be mounted. It can only be mounted in an as-applied statute, in an as-applied setting, and we do not believe that anything in Johnson changes that rule. In Johnson, the defendant himself said, look, this statute, as applied to me, is unconstitutional because I can't figure out whether a sawed-off shotgun is or is not a violent felony. And, oh, by the way, there's no court of the statute, and so you should just hold it unconstitutional across the board. The defendant isn't raising that kind of an argument here. The defendant isn't contending that we can't figure out, under the well-established tests that have long been in place under 924C3B, we can't figure it out. The defendant is instead saying, ignore all that, and go back and just raise a facial challenge. That's not the way that the courts have normally applied it. Now, what does that mean? That does mean that some future defendant might be able to raise this claim and accept the arguments that you're making or might instead accept the arguments that I'm making. But this particular defendant cannot raise that claim and would essentially have to wait in line until such a defendant came along because we know that, as applied to this defendant, there are no such issues on that regard. Mr. Huller, what's the difference in the applicable guideline range between the sex trafficking crime alone and the additional conviction for possessing a firearm? Do you know? Yes, Your Honor. Well, the way the guidelines operate with 924C, Your Honor, in most instances, and I believe this particular case, is simply that 924C, as you know, imposes a five-year mandatory minimum consecutive sentence. The guideline for 924C, I believe, is 2K2.4. There are certain instances where a defendant is a career offender or where there are firearm enhancements already written into the guideline where the effects can be different. But here, essentially, the only difference was that there was a requirement that an extra 60 months be imposed. And the guidelines here, of course, are going to be different anyway because we've conceded that the guidelines go down, and I'm not sure I have the exact guideline recalculation in front of me. I believe he drops to, like, 210 to something, and then the 60 would be on top of that. The impact of this, essentially, is, is there going to be anything, as far as the guidelines are concerned, weighed in for the firearm? The underlying guidelines themselves did not include a firearm enhancement, so that would be something the judge would have to consider, perhaps, in deciding where in the guideline to sentence Mr. Jackson if the 924C is not considered valid. And I see that my time is up. We have conceded that the organizer leader was imposed an error, and we believe that the obstruction enhancement was properly imposed. If the court has no further questions on any of those points, we would ask that the court, our primary position is the court should affirm the convictions and vacate the sentence. Alternatively, the court may wish to simply hold pending demaio. Thank you. I'll give you a minute. Thank you, Your Honor. Your Honor, in the Supreme Court in Smith and in Post v. Cincinnati, the court held the defendant need not make a facial as applied challenge when the statute is so vague as to proscribe no standard of conduct at all, when it's so vague that you can't intelligibly discern what the statute prohibits. Here, the Supreme Court has held an identical, functionally identical statute to be a judicial morass, a black hole with no discernible or systemic system for application. Mr. Jackson need not make an as applied challenge in order to advance the facial challenge that the Supreme Court has already accepted in Johnson and that this court has already accepted in Viva Saja. The Supreme Court has already held that the residual clause is unconstitutionally vague in all applications. That decision binds this court. With regard to the government's argument that there is some difference between a sentencing statute and a crime of conviction, there is no difference at all that the government can articulate as to how that method is applied. The jury is not asked to make a finding that a predicate offense is a crime of violence. Thank you, Counsel. Thank you. Thanks to both counsel, and the case is taken under advisory.